OPINION OF THE COURT
John W. Burke, J.
In this article 78 proceeding petitioner, the Nassau Chapter of the Civil Service Employees Association, Inc. (CSEA), seeks a preliminary injunction, pending a declaratory judgment on behalf of certain active and retired members with respect to their health benefits under the collective bargaining agreement with respondent County of Nassau.
The president of the Superior Officers Association of the Police Department of the County of Nassau, Inc. (SOA), with consent of the respondent, has intervened in the application and filed a petition for similar relief on behalf of that organization’s members. The Patrolmen’s Benevolent Association of the Police Department of the County of Nassau, Inc. (PBA), while not intervening, has submitted an amicus curiae brief in support of petitioners’ contentions.
Petitioners seek a declaration that respondent’s notice of June 25, 1979, to the effect that active and retired employees of the county who have elected to be covered under the Health Insurance Plan of Greater New York (HIP) shall henceforth be required to contribute to premium payments in order to remain as participants in that plan, represents a violation of the terms of the respective collective bargaining agreements between the county and the petitioners. Petitioners also contend that respondent’s actions are in violation of article 44 of the Public Health Law.
The collective bargaining agreement between the county and CSEA provides in pertinent part: "6.10 The County shall fully pay the health insurance premiums of its employees under the existing plans for the coverage they elect. * * * The County shall fully pay the health insurance premium (under the existing plans for the coverage they elect) of its active employees and all employees retiring on or after January 1, 1976. This is subject to all applicable State Regulations and statutes”.
This language appeared in the collective bargaining agreement covering the period January 1, 1977 to December 31, *651 1978. On April 5, 1979, after the terms of a new contract had been negotiated and agreed upon but before the execution of a new contract document, a memorandum of understanding was signed by representatives of CSEA and the county which provided that: "All provisions of the collective bargaining agreement in effect for the period January 1, 1977-December 31, 1978, insofar as the same are not altered by provisions of this Memorandum, shall remain in full force and effect for the new contract period and shall be included in the new formal contract.” The only specific reference in the memorandum to employee health benefits is contained in paragraph 33, which states that: "There shall be a health benefits reopener clause in the contract which shall provide that if other County negotiating units secure additional health benefits, the County will negotiate with the Union regarding same. It has always been the policy of the County to standardize medical benefits for all its employees.” It is clear that the operative language of the earlier contract was carried forward verbatim and a clause added requiring renegotiation of the benefits contemplated by that language in the event some other representative organization was able to obtain any greater health benefits through contract negotiation.
The dispute between the parties has its genesis in certain changes, and the time of such changes, in one of the forms of health insurance available to employees. Resolution of the dispute requires some review of the recent history and nature of the over-all health insurance coverage for the public employees affected here.
The County of Nassau participates in the over-all plan of health insurance provided for active and retired New York State employees adopted by the State Legislature in 1956. The program is administered by the president of the Civil Service Commission, who is empowered to contract with licensed accident and health insurance corporations to secure benefits for public employees and to authorize participation in the program by any public authority, public benefit corporation, or other agency, subdivision or quasi-public organization of the State (Civil Service Law, art 11, § 160 et seqResolution 561-59, County Board of Supervisors, Aug. 24, 1959).
When the 1977 collective bargaining agreement was negotiated, three health insurance options were offered to county employees under the aegis of the State Plan: Statewide Blue Cross and Blue Shield, Government Employees Health Insur *652 anee (GHI) and the Health Insurance Plan of Greater New York (HIP). These separate plans were approved by the president of the Civil Service Commission and administered by that agency.
On January 1, 1979, the HIP plan was qualified and certified by the Commissioner of Public Health as a Health Maintenance Organization and thereafter became known as "HIP/ HMO.” Health maintenance organizations were established by the Legislature in 1976 as "a promising new alternative for the delivery of a full range of health care services at a reasonable cost.” They are intended to offer enrollees basic medical services in consideration for a basic advance or periodic charge (Public Health Law, § 4400 et seq.). As the name implies, the coverage provided by such entities is broader than that provided under treatment-oriented health insurance plans. Upon certification of HIP/HMO, HIP (one of the three plans formerly certified and available to employees) was omitted as an elective health plan by the State on January 1, 1979.
By specific administrative directions public employees who had elected coverage under HIP were afforded the option to transfer their coverage to one of the two remaining insurance plans, viz., either Blue Cross/Blue Shield or GHI, without interruption in coverage, or to select the newly formed HIP/ HMO plan with personal contribution to the premium charges. In the latter event, the extent of a participating enrollee’s contribution was determined by the amount of HIP/ HMO premiums in excess of the premium for the more costly of the two remaining insurance options (Public Health Law, § 4407).
Despite the contribution requirement, the county continued to pay the full premiums applicable to HIP/HMO enrollees to the State which, in turn, forwarded the premiums to HIP/ HMO. In May, 1979 the county was notified that commencing August 1, 1979 the State would no longer collect HIP/HMO premiums. On June 25, 1979 county employees enrolled in HIP/HMO were notified by the county that HIP/HMO was no longer a fully paid option available through the State and that they might transfer to one of the remaining options or remain in HIP/HMO by paying the higher cost through a payroll deduction.
A meeting was requested by the CSEA on July 5, 1979 to discuss the county’s proposed action. In attendance, among *653 others, were representatives of CSEA, SOA, PBA and the county. The county’s position, repeated in its papers here, was that the county is obligated by the terms of the respective collective bargaining agreements to pay full insurance benefits for employees enrolled in one of the options offered by the State health insurance program under article 11 of the Civil Service Law and, since HIP/HMO was not qualified and administered as an option under that program, the county has no obligation to pay the full premiums for coverage thereunder.
It is clear that HIP/HMO is not an extension or continuation of HIP. The enabling legislation demonstrates that it is a new and independent entity. Upon certification, HIP/HMO became qualitatively different from the remaining plans and from HIP, offering services distinct from those that had been offered by HIP. HIP/HMO is subject to supervision and regulation by different State agencies and is not within the options offered by the State. Thus, the benefits bargained for by petitioner with respect to "existing plans” do not include the county’s payment of the premiums charged to employees who have elected to continue enrollment in HIP/HMO.
CSEA contends, however, that HIP/HMO was in existence and thus was an "existing plan” on April 5, 1979 when the memorandum of understanding was signed continuing section 6.10 of the collective bargaining agreement in full force and effect. Respondent rejoins that the words "existing plans,” as used in section 6.10, are limited to those plans authorized and administered by the Civil Service Commission pursuant to article 11 of the Civil Service Law.
While extrinsic evidence is not appropriate to the construction of a written agreement, the setting and circumstances which gave rise to the agreement may and must be considered (Aron v Gillman, 309 NY 157). In the papers submitted by both sides there is agreement that with regard to employee health plans there was no negotiation toward or change in benefits intended during the negotiations giving rise to the April 5, 1979 memorandum of understanding. The court must conclude, therefore, that when the language of the collective bargaining agreement first evolved, the phrase "existing plans” referred to those three health insurance options approved and administered through the State. The perpetuation of that language by the memorandum of understanding permits no other interpretation than that the parties again *654 intended to refer to those health benefit options approved and administered by the State. HIP/HMO is not in that category. That the county paid HIP/HMO premiums in the transition period from January 1, 1979 to August 1, 1979 is not persuasive to establish that HIP/HMO was intended to be an "existing plan.”
Petitioner SOA’s collective bargaining agreement with the county is more explicit than that of the CSEA. It requires that: "The County shall pay the full contribution of all health insurance plans authorized pursuant to Article XI of the Civil Service Law.” The import of that language is plain. The county’s obligation to pay the full cost of premiums for employee health insurance is limited to coverage under those plans authorized and administered by the Civil Service Commission. Inasmuch as HIP is no longer offered as an option by the State and HIP/HMO is not authorized under article 11 of the Civil Service Law, respondent cannot be required to pay any greater premium to HIP/HMO than is required by section 4407 of the Public Health Law.
Accordingly, the petitions of CSEA and SOA are denied.